## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

In re

**KRIS JAY KAHLE** and
**KIMBERLEY MARY KAHLE**,

Debtors.

Case No. **11-61359-13**

## MEMORANDUM OF DECISION

At Butte in said District this 8th day of February, 2013.

Pending in this Chapter 13 is the motion to dismiss (Docket No. 85) filed by Debtors Kris Jay Kahle ("Kris") and Kimberly Mary Kahle ("Kim") (together "Kahles" or "Debtors") under 11 U.S.C. § 1307(b). Objections thereto were filed by creditor Robert A. Charbonneau ("Charbonneau"), who also moved to convert the case to Chapter 7 alleging bad faith by the Debtors in filing their Chapter 13 petition and plan. The Chapter 13 Trustee has also filed a motion to convert. A hearing on the Debtors' motion to dismiss and Charbonneau's objections and motion to convert was held at Missoula on November 8, 2012. The parties appeared represented by counsel, and Kim testified. Charbonneau appeared but called no witnesses. After hearing the testimony and admitting exhibits, the Court took the motion to dismiss under advisement. After review of the record and applicable law, for the reasons set forth below the Court will enter an Order granting Debtors' motion to dismiss under § 1307(b) and denying the motions to convert[1].

---

[1]The matters pending in Adversary Proceeding No. 12-00014 will be addressed in a separate Memorandum of Decision in that case.

1

This Court has jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Debtors' motion to dismiss is a core proceeding under 28 U.S.C. § 157(b)(2). This Memorandum includes the Court's findings of fact and conclusions of law.

Debtors were represented at the hearing held at Missoula on November 8, 2012, by attorney Jon R. Binney of Missoula. Charbonneau appeared represented by attorney Andrew W. Pierce ("Pierce"). Charbonneau's Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 10, and 11 were admitted without objection. Ex. 9[2] and 12 were admitted over Debtors' objections.

### FACTS & PROCEDURAL HISTORY

Kris and Kim Kahle are the Debtors in this case. Kim is self employed as a realtor, and her work includes marketing lots in real estate projects which are developed by entities owned by her extended family in or near Philipsburg, Montana.

Kim testified that Kris was unable to attend the hearing on November 8, 2012, because of health problems. She testified that Kris has suffered from two aortic aneurysms, spondylitis, arthritis, and a spot on his kidney. She testified that Kris underwent a 10-hour surgery for aortic dissection of his heart to repair leakage. That surgery included placing a stent in his carotid artery and left him paralyzed on his right side. Kris underwent a second operation for another aneurysm, and had a kidney and a tumor removed. Lately, she testified, Kris has developed grand mal seizures as a side effect of his medication. Kim testified that she has been caring for Kris since August of 2012, while she is self employed, even though Kris no longer recognizes her or their daughter. Kim's testimony regarding Kris's health condition and medical problems is

---

[2]Ex. 9 is the transcript of Kim's deposition. The Court admitted into evidence the specific portions of Ex. 9 about which Charbonneau's counsel examined Kim at the hearing.

uncontroverted.

Kim was asked on cross examination about the ownership of approximately $5 million worth of real estate lots near Philipsburg. She answered that most of the lots are owned by Terco, Inc. ("Terco"), of which she said she owns no interest[3]. She testified that she owns a two percent (2%) interest in 2 entities named Bossard Family LLC and Whiskey Flats LLC, which own seven lots of real estate in Philipsburg. Ex. 9, pp. 50-52.

Ex. 11 is a compilation of Kim's active real estate listings in the areas of Great Falls, Clinton, Stevensville, Georgetown Lake, and several lots in Whiskey Flats. Other than the seven lots in the Whisky Flats in which she owns 2%, most of the lots in Whiskey Flats are owned by Terco. Kim is the listing agent for Whiskey Flats. She testified that the list prices for the seven lots in which she owns a 2% interest have not changed during the last three years, nor have there been any sale of lots in the development for 3 years. She estimated that she could receive up to $10,000 from the sale of the 7 lots, but only in a best-case scenario.

Charbonneau sued Kim, her father Richard C. Bossard, his corporation Richard C. Bossard Real Estate, Inc., and Terco in the Montana Third Judicial District Court, Granite County, Case No. DV-09-06, on January 30, 2009 (the "state court action"). Ex. 2 is Charbonneau's complaint in DV-09-06, and it avers seven claims for relief against all defendants[4]. Ex. 2 alleges that Kim and her father are realtors, and were involved in

---

[3]Kim's deposition, Ex. 9, describes Terco's ownership by her uncle and his family at pp. 48-49.

[4]The 7 claims for relief in Ex. 2 are:  Breach of contract; breach of the covenant of good faith and fair dealing; unjust enrichment; tortious breach – bad faith; actual fraud; constructive fraud; negligent misrepresentation; and professional negligence.

Charbonneau's entry into a buy-sell agreement with Terco in which Charbonneau agreed to purchase Tract 29 of the proposed Whisky Flats subdivision near Philipsburg from Terco for $70,000, with another $80,000 to be loaned by Kim to Charbonneau so that he could commence construction on Tract 29. According to Charbonneau's complaint, approval of the subdivision plat was delayed, and Charbonneau spent or borrowed nearly $200,000 trying to complete the project. Charbonneau alleged that his credit rating was damaged by the delay in approval of the subdivision, and he could not get a final bridge loan so could not complete construction or pay the final $70,000 purchase price balance, and the defendants threatened to foreclose and retained title to Tract 29. Charbonneau prayed in Ex. 2 for damages under contract and tort claims, rescission, exemplary damages and attorney fees against Kim and the other defendants.

The defendants in DV-09-06 filed an answer on April 13, 2009, stating defenses, individual and joint counterclaims, and a demand for jury trial. Ex. 3. Kim's counterclaim sought $80,000 in damages and attorney fees against Charbonneau based on the money Kim loaned him, claimed a priority lien against Tract 29, and asked for exemplary damages against Charbonneau based on his alleged fraudulent representations that he had been qualified for a loan to purchase Tract 29 and complete a home without title to the property, and that he could complete the construction if Kim loaned him additional funds. Ex. 3. As to the counterclaims of all defendants, they prayed for judgment against Charbonneau in the amount of $500,000 plus attorney fees and costs. Ex. 3.

Defendants in DV-09-06 moved for summary judgment on all claims against them. Ex. 4 is the first page of the state court's order denying defendants' motion for summary judgment, dated June 10, 2011.

4

Debtors filed a voluntary joint Chapter 13 petition, Schedules, and Statement of Financial Affairs ("SOFA") on July 14, 2011, listing total assets in the amount of $1,307,291.10 and total liabilities of $916,027.41.  Ex. 1.  Kim testified that she and Kris have never filed a bankruptcy case prior to the instant case, and no evidence exists in the record to the contrary.  When asked why they filed their bankruptcy petition, Kim testified that they wanted to attend to a growing number of creditors and to determine Charbonneau's "frivolous" lawsuit.  Debtors signed their Schedules and SOFA, declaring under penalty of perjury that they have read them and that they are true and correct to the best of their knowledge, information and belief.

Schedule A lists real property with a total current market value of $1,273,022.00, comprised of five (5) parcels of jointly owned real property – Debtors' residence at 4595 Zintek Place in Missoula, Montana, and a property located at 12795 Mullan Rd. in Missoula, each listed with a value of $350,000; a property at 100 Yellowjacket Lane in Anaconda, Montana, valued at $133,334.00; #5 Kim Court in Philipsburg valued at $227,100.00; and #11 Short Horn in Philipsburg valued at $212,588.00.  Ex. 1.  Schedule A lists claims secured by the Mullan Road property in the sum of $211,204.32.

Schedule B lists personal property with a total value of $34,269.10, mainly comprised of Debtors' vehicles, household goods and firearms.  At item no. 12 of Schedule B ("Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.  Give particulars.") Debtors marked "x" under the column headed "None."  Ex. 1.  That entry is false.  Ex. 12 is a warranty deed for a real estate lot which Kim testified was in her retirement account, which she described as a profit sharing plan of which she is the administrator.  Under cross examination Kim testified that the profit sharing plan with the lot is disclosed in her Schedules, but no such lot or profit

5

sharing plan is listed.  When shown her Schedules and SOFA[5], which in fact do not list any interest in a profit sharing plan, on cross examination Kim admitted that she made a mistake, but she believes that her profit sharing plan is exempt.

At item 13 of Schedule B ("Stock and interests in incorporated and unincorporated businesses.  Itemize") Debtors marked "None."  Debtors also answered "None" at item no. 14 ("Interests in partnerships or joint ventures.  Itemize").  At trial Kim admitted that these entries were incorrect.  Regarding her 2 % interests in Bossert Family LLC and Whiskey Flats LLC, Kim testified that she did not list those interests in her Schedules by oversight.   She explained that if the seven lots in Bossert Flats and Whisky Flats are sold for full price she could receive a $10,000 commission in a best case scenario.

Kim testified that Debtors failed to list her counterclaim against Charbonneau in the state court action DV-09-06 in their Schedules, which she described as a misunderstanding and oversight.  The prayer of her individual counterclaim in Ex. 3 asks for a total of $80,000 damages on the first count, and unspecified damages and exemplary damages from Charbonneau on the second count for his alleged fraudulent representations.

Schedule D lists creditors holding secured claims totaling $809,561.78, including First Security Bank which is listed with six claims secured by Debtors' Missoula properties, including a first and second mortgage on the Mullan Road property; Sun Trust Bank with claims secured by mortgages against Debtors' residence in Missoula and their Anaconda property; and Richard and Margaret Bossard who are listed as having a claim secured by #5 Kim Court.

Schedule F lists a total of $102,726.09 in unsecured nonpriority claims, included a claim

---

[5]Item 14 of the SOFA ("Property held for another person") is marked "None."

6

of Charbonneau marked "disputed" in the amount stated of $3,300.00.  When asked on cross

examination about why she listed his claim in the amount of $3,300, Kim testified that she

calculated the $3,300 as the amount of Charbonneau's own money which he had put into

construction on Tract 29, beyond the $80,000 she testified she loaned him.  She testified that

Charbonneau submitted false bills to her, based on quotes which she found to be untrue and kept

changing, that Charbonneau tried to charge her for chewing tobacco, gasoline, beer, lunches,

dinners, groceries and other bills which had nothing to do with construction of his project on

Tract 29.  She testified that she arrived at the sum of $3,300 for Charbonneau's claim on

Schedule F after deducting his false and frivolous charges.

Schedule I lists Debtors' monthly income in the total amount of $7,023.76.  Kris's

income is entirely from social security disability and pension or retirement income.  Kim lists

$2,816.00 in monthly wages and $2,850 income from real property.  Schedule J lists expenses

totaling $6,695.95, leaving monthly net income of $327.81.

Debtors' SOFA lists at item no. 4 Charbonneau's state court action against Kim, Terco,

her father and her father's corporation in DV-09-06, stating the status as pending.

On May 4, 2012, Debtors amended Schedule A to provide that #11 Short Horn is owned

solely by Kim rather than jointly.  When asked on cross examination why they did not amend

their Schedule B to add Kim's ownership 2% interests in Bossert Family LLC and Whiskey Flats

LLC, Kim answered that she listed their property interests which are in the Debtors' individual

names, and it was an oversight on her part.  She testified that she has still not amended Schedule

B because of Kris's health and because she decided to move to dismiss the case.

Charbonneau's counsel pressed Kim whether there are any other assets worth more than

$1,000 which are not listed on the schedules and she answered no.  Charbonneau offered no evidence of other missing assets.

The notice of commencement of this case and 11 U.S.C. § 341(a) meeting of creditors was entered on July 14, 2011, and sent to creditors, including to Charbonneau's attorney in the state court action.  The § 341 meeting was held on August 18, 2011.

Debtors filed their Chapter 13 plan, and filed a First Amended Plan (Dkt. 17) to which the Chapter 13 Trustee consented.  An Order confirming Debtors' Plan was entered on September 20, 2011.  The confirmed Plan provided for 60 months of payments in the amount of $100, plus a sale of the Debtors' rental real estate located on Mullan Rd. in Missoula, and #11 Short Horn in Philipsburg, by July 14, 2014, with sale proceeds to be paid to the Trustee to fund the Plan after satisfaction of secured claims and approved fees.  Paragraph 2(g) provides for at least $107,197.95 to be distributed to unsecured claims[6].

Kim testified that she listed the Mullan Road property in Missoula for sale for a short period of time, but she had to rent it out in order to make the mortgage payments.  She testified that her tenants were going to buy the Mullan Road property, but their financing fell through.

Kim testified that she advertised #11 Short Horn for sale on the MLS and Craigslist on the internet.  On October 21, 2011, Debtors filed a motion, Ex. 6, for authority to sell the real property at #11 Short Horn Drive for $244,000 to Corina and Shawn Bouldin ("Bouldins") under a contract for deed.  Kim testified that the purchasers were the current tenants who wished to purchase the Short Horn property, which according to her was not finished and her father insisted

---

[6]The claims register lists a total amount of claims filed in the amount of $857,079.31, of which $787,161.58 are secured claims and $2,382.57 are priority claims.

on finishing it.

The terms of Ex. 6 included a $4,000 downpayment, $16,000 worth of improvements, payments of $1,288 per month and a balloon payment after 4 years.  Ex. 6 explains that the sale is to include the exchange of Debtors' collateral in #11 Short Horn for her father's lien on property located at #5 Kim Court, which would allow Kim to sell #5 Kim Court free and clear "to pay all unsecured claims in full."  Kim testified that the idea to exchange collateral with her father was "probably" hers, and that her parents were willing to accept the contract for deed payments in place of their lien on #5 Kim Court in order to help the Debtors with their financial problems.  Ex. 9, pp. 201-02.  She testified that #5 Kim Court is more valuable than #11 Short Horn because the latter was unfinished.

Charbonneau objected to the sale on November 4, 2011, on the grounds #11 Short Horn Drive is the subject of the litigation between himself, Kim and Kim's father.  That objection was resolved by amended stipulation between Debtors, Charbonneau, Kim's father and the Chapter 13 Trustee, Ex. 7, which was approved on January 11, 2012, by Order, Ex. 8.[7]  Since then, Kim's father has been receiving monthly payments from Bouldins under the contract for deed.  She testified that her father receives $1,288 per month, where before he was receiving no payments from Debtors, but she justified the payments because her father contributed the $16,000 under the stipulation to complete the Short Horn property.

_____

[7]The stipulation is Ex. 7.  It provides that the Court may approve Debtors' motion to sell the Short Horn property.  Charbonneau's claims are to be secured by liens against Debtors' Kim Court property, and possibly against the Short Horn property depending on the extent to which his claims are allowed.  Kim's father is authorized to expend up to $16,000 to make the Short Horn property saleable, and is entitled to a transfer of seller's rights under the contract for deed in the amount of his claim secured by the Kim Court property.

Charbonneau filed his Proof of Claim No. 27-1 on November 16, 2011, asserting a secured claim in the amount of $221,763.09, with the basis of the claim described as "unjust enrichment/constructive trust" and secured by real estate valued at $275,000.  The attachment to Claim 27-1 is a narrative explaining that Charbonneau's claim arises from a contract to purchase real property located at #11 Short Horn Drive, a/k/a Tract 29, from the Debtors, which is the subject of litigation in Granite County, Montana, between Charbonneau, Kim and her father Richard C. Bossard and his corporations.  The attachment states that Charbonneau spent $200,000 building himself a home on Tract 29 but did not receive title to the property or compensation.

Debtors filed an objection to Charbonneau's Claim 27-1 on November 22, 2011, asking that it be disallowed. On March 1, 2012, Charbonneau filed an amended Proof of Claim 27-2, which reduced his secured claim to $175,150.89, and provides additional explanation of the bases of his claims.

Debtors filed a Second Modified Amended Plan on January 2, 2012, Ex. 5, to which the Trustee consented, and the modification was approved on January 13, 2012.  The modified Plan increased the monthly plan payments after month 5 to $150, and added a possible sale of #5 Kim Court by 7/14/2014 to fund the Plan.  Asked on cross examination whether Kim Court is currently listed for sale Kim answered no, but that her current renters of Kim Court have expressed an interest in purchasing it.

On April 3, 2012, Charbonneau filed his complaint against Debtors initiating Adversary Proceeding No. 12-14.  Charbonneau's complaint avers eight (8) claims for relief against Debtors, including most of his claims for relief from his complaint in the state court case DV-09-

06[8].  By stipulation between the parties Kris was dismissed from Adv. No. 12-14 without

prejudice on May 14, 2012.  After an attempt at mediation in Adv. 12-14, Charbonneau filed a

motion for summary judgment.  Kim filed a response in opposition and a motion to dismiss Adv.

12-14.

     Kim testified that she listed the Mullan Road property in Missoula for sale for a short

period, but she had to rent it in order to make the mortgage payments.  She testified that it is

more difficult to list the Mullan Road property for sale when the property is rented, and that if

she lists the property she is afraid her current tenants will back out of their plans to purchase it.

Ex. 10 is a printout of an MLS property listing for 12975 Mullan Road which shows an asking

price of $290,000 on the listing date of August 29, 2012.  Ex. 10 states the property was taken off

the market on September 10, 2012.  Kim testified that the listing period was so short because her

renter moved out and she had to get new renters or she could not make the mortgage payments.

     Kim testified that the renters were going to purchase the Mullan Road property last

summer but their financing through family fell through.  She testified that, under a new use

agreement, the shop on the Mullan Road property can be turned into a second dwelling and will

make the property a lot more valuable.  Her current renters still want to purchase the Mullan

Road property and move into the shop, and Kim does not want to list the Mullan Road property

for sale because she is afraid the renters will move out.

     On September 26, 2012, Charbonneau filed a motion[9] to vacate the order confirming

---

     [8]The complain in 12-14 adds a claim for violations of Montana's Consumer Protection
Act.

     [9]Charbonneau's attorney withdrew his motion to vacate confirmation at the hearing on
November 8, 2012.

Debtors' Plan because it does not provide for Charbonneau's secured claim in any fashion as required by 11 U.S.C. § 1325(a)(5), so the confirmation order was entered by mistake[10].

Debtors filed their motion to dismiss on October 9, 2012[11].  Kim testified that they filed their motion to dismiss because the mediation held in Adv. No. 12-14 was unsuccessful, because Kris's health issues and care needs interfere with Kim's ability to prepare for trial, and because Debtors determined that the bankruptcy court lacks jurisdiction to hear and decide Adv. 12-14 based on the decision entered by the United States Supreme Court in *Stern v. Marshall*, _ U.S. _, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011)[12].

Charbonneau filed a combined objection to dismissal and a motion to convert on October 14, 2012, alleging that Debtors engaged in bad faith conduct and unfair manipulation of the Bankruptcy Code, based on *In re Rosson*, 545 F.3d at 767, 773-74 (9th Cir. 2008) and *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).  The Chapter 13 Trustee filed a motion to convert the case on November 7, 2012, based on Charbonneau's motion to convert, and the Trustee filed another motion to convert on January 11, 2013, the latter based upon Debtors' default under payments due under the confirmed plan and

---

[10]Allowance of Charbonneau's secured claim has not been decided and is the subject of Adv. No. 12-14.

[11]An order was entered in error (Dkt. 86) dismissing the case, but the Court vacated that order and granted the parties time to respond to Debtors' motion to dismiss on October 9, 2012

[12]Regardless of Kim's belief, this Court decides whether it has jurisdiction to hear and decide Adv. No. 12-14.  The Supreme Court in *Stern v. Marshall* specifically stated its decision did not implicate questions of subject matter jurisdiction, and went on to conclude only that bankruptcy courts lack the constitutional authority to enter final judgments on state law counterclaims that are not resolved in the claims allowance process.  *Stern v. Marshall*, 131 S.Ct. at 2607, 2620.

failure to turn over tax returns.  Kim testified at the November 8, 2012, hearing that Debtors had made all their plan payments due up to that date, and that if they had completed their plan they would have paid creditors through the sale of their properties.  Since the hearing Debtors have ceased making plan payments under their confirmed Plan.

Kim was asked by her counsel on direct examination how she proposes to pay her creditors if this case is dismissed.  She responded that she can pay creditors by selling one or two of her properties, perhaps to a family member, and that she is looking at taking out a loan to pay creditors.   Kim testified that her father was helping her pay the creditors, and that she seeks dismissal in order to proceed with the litigation in state court in DV-09-06 against Charbonneau in state court.  She testified that Kris's health is the basis for Debtors' motion to dismiss this case, and that she is able to deal with their creditors including Charbonneau outside of bankruptcy.

She testified that, after dismissal of this case, she is willing to proceed in the state court litigation with Charbonneau and the other defendants.  She testified that she learned that Charbonneau has resumed the litigation against the other state court defendants, and that not allowing dismissal of this case and Adv. No. 12-14 would result in simultaneous lawsuits.

## APPLICABLE LAW and DISCUSSION

Debtors filed their motion to dismiss based upon § 1307(b).  Conversion or dismissal of this case is governed by § 1307, which reads in pertinent part:

(b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.  Any waiver of the right to dismiss under this section is unenforceable.

(c) . . . [O]n request of a party in interest, or the United States trustee and after

13

notice and a hearing, the court may convert a case under [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

*See Rosson*, 545 F.3d at 771.

This case has not been converted previously under §§ 706, 1112 or 1208.  In *Rosson*, the Ninth Circuit noted that the conflict between § 1307(b) and (c) divided  courts, with some courts holding that debtors had an absolute right to dismiss while others held that bankruptcy courts had the power to convert a case under § 1307(c) even when debtors requested dismissal under § 1307(b).  *Rosson*, 545 F.3d at 771.  That conflict is now resolved.  The right to dismiss under § 1307(b) is no longer absolute, but rather is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process.  *Rosson*, 545 F.3d at 767, 773-74; *Marrama*, 549 U.S. at 375, 127 S.Ct. at 1112; *see also In re Chabot*, 411 B.R. 685, 700-01 (Bankr. D. Mont. 2009).

The Court in *Marrama* did not decide with precision what qualifies as bad faith, but emphasized that the debtor's conduct must in fact be atypical.  *Rosson,* 545 F.3d at 773, quoting *Marrama,*127 S.Ct. at 1112 n.11.  The Ninth Circuit in *Rosson* cited its decisions in *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222-23 (9th Cir.1999) and *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (per curiam), that a finding of bad faith is a finding of fact reviewable for clear error.  *Rosson*, 545 F.3d at 774.

In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances." *Leavitt* , 171 F.3d at 1224-25; *Chabot,* 411 B.R. at 701; *In re Gress*, 257 B.R. 563, 567, 19 Mont. B.R. 30, 34 (Bankr. D. Mont. 2000);  *Eisen*, 14 F.3d at 470.  In affirming this Court's dismissal of a Chapter 13 case with prejudice, the district court in this

14

district has adopted the *Leavitt* "totality of the circumstances" list of factors. *In re Kreilick*, 18 Mont. B.R. 419, 421-22 (D. Mont. 2000); *In re Hungerford*, 19 Mont. B.R. 103, 130 (Bankr. D. Mont. 2001).

A finding of bad faith does not require fraudulent intent by the debtor. *Hungerford*, 19 Mont. B.R. at 130; *Gress*, 257 B.R. at 568:

> This Court noted in *Gress*:
>
> A finding of bad faith does not require fraudulent intent by the debtor.
>
> > [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law-malfeasance is not a prerequisite to bad faith.
>
> *In re Powers*, 135 B.R. 980, 994 (Bankr.C.D.Cal.1991) (relying on *In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986)).
>
> The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *In re Leavitt*, 171 F.3d at 1222-23; *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994); *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 1996), aff'd, 120 F.3d 268 (9th Cir.1997).
>
> The same factors govern whether Gress filed his petition or his plans in bad faith. *In re Eisen*, 14 F.3d at 470; *In re Leavitt*, 171 F.3d at 1224.

257 B.R. at 568; *Greatwood v. United States (In re Greatwood)*, 194 B.R. 637, 639 (9th Cir. BAP 9th Cir.1996), *aff'd*, 120 F.3d 268 (9th Cir.1997). Thus, this Court has the discretion to dismiss this case, or to convert the case to Chapter 7 as Charbonneau and the Trustee request.

In *Leavitt*, 171 F.3d at 1224, the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith a bankruptcy court should consider (1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise

filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and

dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether

egregious behavior is present.  *See also In re Cavanagh*, 250 B.R. 107, 114 (9th Cir. BAP 2000),

*Chabot*, 411 B.R. at 701-02.  After considering the four *Leavitt* factors and the evidence admitted

in this case, the Court concludes that the Debtors filed their Chapter 13 petition and plans in

good faith, and that dismissal of the case is in the best interests of creditors and the estate.

The first *Leavitt* factor is whether the debtors misrepresented facts in their petition or

plan, unfairly manipulated the Code, or otherwise filed their petition or plan in an inequitable

manner.  The Court finds that Charbonneau has satisfied his burden of proof on the first *Leavitt*

factor.

Charbonneau argued that Debtors unfairly manipulated the Code by moving to sell #11

Short Horn, which is the subject of his claims in the state court action, and then by stipulation

granting him a lien on Short Horn if his claim is allowed in an amount over $200,000, only to

give Kim's father a prior lien on Short Horn and allow her father to begin receiving monthly

payments under the contract for deed.  Charbonneau argues that permitting Debtors to dismiss

the case now after lengthy litigation would allow her to manipulate the Code by moving her

father's lien ahead of his and benefitting herself and her father.

The Court does not consider Debtors' motion to dismiss after resolution of Debtors'

motion to sell #11 Short Horn to constitute unfair manipulation of the Code.  Section 363(f) and

§ 1303 authorize a debtor to sell property free and clear of any interest if the conditions are met.

Charbonneau filed an objection to the sale, but that objection was resolved by stipulation, Ex. 7,

and the motion to sell was granted with Charbonneau's consent.  Charbonneau's attorney signed

Ex. 7 presumably having read it, and so Debtor agreed to the sale of #11 Short Horn with the exchange of her father's lien against the Debtors' Kim Court property.  The uncontroverted testimony at trial is that the Kim Court property is more valuable than #11 Short Horn because the construction on the Short Horn property was not complete.

Debtors objected to Charbonneau's claim, and he has not won a judgment against the Debtors in the state court action.  Thus, no evidence exists in the record that Charbonneau had a lien against #11 Short Horn at the time Debtors filed the petition.  Charbonneau's secured status is no different after the sale of #11 Short Horn than before, except that if he ultimately wins a judgment against the Kahles his judicial lien would attach to the more valuable Kim Court property instead of Short Horn.  His remedies against Kim's father also remain and await the result of the state court action, and the sale of #11 Short Horn had no material effect on his rights and remedies against the other parties to DV-09-06.

Likewise, the Court finds that no evidence exists in the record that Debtors filed their plan in an inequitable manner.  They obtained the Trustee's consent to confirmation of their Plan, and the Trustee's consent to a modified Plan, which increased the plan payments and added a possible sale of #5 Kim Court, which Charbonneau's Ex. 6 explains would "pay all unsecured creditors in full."  Charbonneau's motion to convert notes that Debtors were current on their plan payments at the time, and therefore Debtors demonstrated an ability to perform under the terms of their plan until they moved to dismiss.  The debtor in *Chabot*, by contrast, never filed a chapter 13 plan as required by 11 U.S.C. § 1321.

However, the evidence shows by a strong preponderance of the evidence that the Debtors failed to list several assets in their Schedules, including Kim's interest in a profit sharing plan,

17

her 2% interests in the entities, which owned seven lots in Whiskey Flats, and her counterclaims against Charbonneau in DV-09-06, which in Ex. 3 Kim prayed for judgment in excess of $80,000. The Court recognizes the stress and pressure Kim is under because of Kris's health problems, and sympathizes. But while that distraction may help explain why Kim failed to include the assets in her Schedules, it does not excuse Debtors' failure to list those 3 assets.

Rule 1007(b), F.R.B.P., specifically requires debtors to file "schedules of assets and liabilities." Kim's interest in the seven lots, profit sharing plan and her counterclaims against Charbonneau were required to be disclosed in Debtors' Schedules. Debtors failed to disclose those assets in their Schedules, and failed to amend their Schedules to include them. Liberal amendment of schedules is allowed as a matter of course at any time before a case is closed under Rule 1009(a). *In re Michael*, 163 F.3d 526, 529 (9th Cir. 1998) (citing cases). However, amendment may be denied on a showing of a debtor's bad faith. *Id.*; *In re Magallanes*, 96 B.R. 253, 255-56 (9th Cir. BAP 1988). Debtors' failure to list all their assets and liabilities in their schedules, including by amendment, is not excused by their motion to dismiss. The Court finds and concludes that the first *Leavitt* factor shows bad faith by the Debtors in filing their Chapter 13 bankruptcy petition and Schedules, which omitted assets[13].

The second *Leavitt* factor is the debtor's history of filings and dismissals. Kim testified that the Debtors have not filed any prior bankruptcy case. No evidence exists to the contrary, and the Court's records reflect no prior bankruptcy filings. By comparison, in *Chabot* the Court

---

[13]Under 11 U.S.C. § § 727(a)(4)(A), only a single false oath involving a material false statement or omission in a debtor's schedules is required for denial of discharge if it detrimentally affects administration of the estate. *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999); *In re Wright*, 364 B.R. 51, 7 (Bankr. D. Mont. 2007).

found the debtor's history of filing five bankruptcy cases since the year 2000 as clear evidence of bad faith. *Chabot*, 411 B.R. at 703. Since no history of filings and dismissals exists in the record, the Court finds that the second *Leavitt* factor does not weigh in favor of a finding of bad faith.

The third *Leavitt* factor is whether the debtors intended to defeat state court litigation. Charbonneau argues that he has claims in Adv. No. 12-14 ready for summary judgment in the amount of $776,000.00, and that the Debtors filed their Chapter 13 petition a short time after the state court denied defendants' motion for summary judgment which demonstrates that they intended to defeat state court litigation by filing their petition. This Court does not accept those facts as proof of an intent to defeat state court litigation.

Charbonneau did not prevail in the state court action in his claims against the defendants. Ex. 4 shows only that the state court denied defendants' motion for summary judgment. No evidence exists that Charbonneau won a judgment in DV-09-06. This Court will not speculate that Charbonneau will prevail in the state court action, or that he would prevail against Kim in Adv. 12-14 on summary judgment, or at trial. Charbonneau's state court action has not been defeated by Debtors' chapter 13 filing, it was merely stayed.

The automatic stay imposed by 11 U.S.C. § 362(a) upon the filing of a petition is one of the fundamental debtor protections provided by the bankruptcy laws. *In re Mittlestadt*, 20 Mont. B.R. 46, 51-52 (Bankr. D. Mont. 2002), quoting *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. Mont. 2000). It gives debtors a breathing spell from creditors, stops all collection efforts, all harassment, all foreclosure actions, and it permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into

19

bankruptcy.  *Mittlestadt*, 20 Mont. at 51-52.

The Kahles filed their Chapter 13 petition seeking a breathing spell under the stay, and attempted to execute a chapter 13 plan until they decided to dismiss under § 1307(b).  This Court does not interpret such actions, which are authorized by the Code, as evidence of intent to defeat Charbonneau's state court litigation.  Upon dismissal of this case the stay would be terminated and Charbonneau would be free to return to the state court in DV-09-06 and request the court to schedule a trial date.  The Court finds no evidence in the record upon which the Court can make a finding of bad faith under the third *Leavitt* factor that Debtors intended to defeat state court litigation.

The final *Leavitt* factor is whether egregious behavior is present.  Only an "honest but unfortunate" debtor is entitled to a "fresh start" under the Bankruptcy Code.  *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).  Above, the Court found that Debtors misrepresented facts when they failed to list three assets in their Schedules.  However, the Court must admit that such conduct by itself is not "atypical, bad faith debtor conduct." *Rosson*, 545 F.3d at 774; *Marrama,* 127 S.Ct. at 1112 n. 11.

The debtor in *Rosson* defied a specific bankruptcy court order to deliver $185,000 in mediation for payments under his chapter 13 plan, and instead used it to remodel his home.  545 F.3d at 774.  The bankruptcy court concluded that the debtor sought to dismiss his case and abscond with the proceeds, which the court found was egregious, and the Ninth Circuit affirmed. *Id*. at 774, 777.  In *Chabot* this Court found the debtor engaged in egregious behavior by her repeated chapter 13 filings, her participation in a fraudulent investment scheme, her tender of bogus promissory notes in full payment of a mortgage, and by failing to file state and federal tax

returns for several years. *Chabot*, 411 B.R. at 703-04. The Court finds no comparable evidence of egregious behavior by the Kahles in the instant case.

Charbonneau contends that egregious behavior is present because of Debtors' failure to sell their Mullan Road and Kim Court properties and pay creditors in full, and by instead renting them and keeping the proceeds, then moving to dismiss the case. In addition, Charbonneau argues that Debtors' attempt to dismiss after selling #11 Short Horn to her father's benefit, and after Charbonneau has proved up his claims, shows egregious behavior because he will have to return to state court and will lose the liens Kim promised him in the stipulation. Finally, he suggests that if allowed to dismiss this case Kim likely will return to bankruptcy once again if the state court action "begins untenable," which is more speculation unsupported by any evidence.

The Court repeats that Charbonneau has not prevailed in DV-09-06, or in Adv. No. 12-14. At present Charbonneau has no allowed claim, nor has he shown he has any lien against Debtors' property shown by the evidence. He filed a proof of claim, which Debtors dispute and have objected to, and the claims allowance process has not been completed with respect to Charbonneau's claim. Charbonneau's liens under the stipulation, Ex. 7, depend upon his claims being allowed, and in the case of the Short Horn property Charbonneau's claim had to be allowed in the amount of at least $200,000 before he would be granted a second lien. His argument is premature.

Charbonneau argues that dismissal would force him to return to state court, and lose the benefit of his preparation in Adv. 12-14. The Court notes the similarities between the complaint in DV-09-06, Ex. 2, and Charbonneau's complaint in Adv. 12-14. If this case and Adv. 12-14 are dismissed, and if Charbonneau wished to move for summary judgment in DV-09-06 it would

21

to some extent be a matter of simply cutting and pasting from his motion for summary judgment in Adv. 12-14, at least with respect to his claims against Kim. Otherwise he can request a trial date be set. It is clear to the Court, if not to Charbonneau, that the interests of judicial economy are better served by him proceeding in a single litigation instead of two separate cases[14].

In sum, the first of the four *Leavitt* factors show bad faith by the Debtors in filing their Chapter 13 petition and Schedules which omit assets. The Court finds and concludes that the other three *Leavitt* factors do not show bad faith by the Debtors in filing their petition and plan. In reviewing the "totality of the circumstances," the Court concludes that the Debtors filed their petition and plan in good faith despite their omission of assets[15]. *See Leavitt*, 171 F.3d at 1224-25; *Chabot*, 411 B.R. at 701. The Court concludes that Debtors are not prohibited from dismissing their case under § 1307(b) because of bad faith under *Marrama* and *Rosson*, and further finds that dismissal is in the best interests of creditors and the estate.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a).

2. Debtors' motion to dismiss is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Charbonneau failed to satisfy his burden of proof to show by a preponderance of the evidence that the Debtors filed their Chapter 13 petition and plan in bad faith, or that their filing

---

[14]Adv. 12-14 involves only Charbonneau and Kim. Any judgment entered in Charbonneau's favor in Adv. 12-14 would have no issue preclusive effect with respect to the non-debtor defendants in DV-09-06, and Charbonneau would have to return to the state court action in any event if he wishes to obtain relief from "deep pockets."

[15]This result should not be interpreted as a disregard for the seriousness of Debtors' failure to list assets. If the record did not show uncontroverted evidence of Kris's serious health and medical problems, and the burden and stress place upon Kim for his care, their failure to list assets could have resulted in a conclusion of bad faith under the totality of the circumstances.

is an abuse of the bankruptcy process.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling Charbonneau's objections and denying his motion to convert the case to Chapter 7, and granting Debtors' motion to dismiss.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

23